**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

HILO PRODUCTS, INC.,

                                  Civil No. 23-370 (JRT/LIB)

            Plaintiff,

v.

                           **ORDER GRANTING IN PART AND**

TARGET CORP.,
                            **DENYING IN PART DEFENDANT'S**
                                  **MOTION TO DISMISS**

            Defendant.

---

Mason Yamaki, **YAMAKI LAW LLLC**, P.O. Box 7649, Hilo, HI 96720, and Michael Kemp, **AARON FERGUSON LAW**, 2700 Snelling Avenue North, Suite 460, Roseville, MN 55113, for Plaintiff.

Amanda M. Mills, **FREDRIKSON & BYRON, P.A.**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, Leah C. Janus, **FREDRIKSON & BYRON, P.A.**, 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402, and Matthew P. Kopp, **FREDRIKSON & BYRON, P.A.**, 51 Broadway, Suite 400, Fargo, ND 58102, for Defendant.

Between 2011 and 2018, Plaintiff Hilo Products ("Hilo") supplied produce to Defendant Target Corporation's ("Target") stores in Kona and Hilo, Hawaii.  Hilo alleges that Target frequently underpaid invoices from the recurring produce deliveries.  The two companies were able to cooperatively resolve many of those disputes.  But in 2021, Target said it would no longer satisfy any outstanding payments.  Hilo then brought this action to recover nearly $1.37 million in unpaid invoices.

Target moves to dismiss Hilo's complaint, claiming primarily that the action is foreclosed by a one-year time bar in the parties' contract.  Though the contractual statute

of limitations would otherwise bar this action, Hilo has plausibly alleged that Target should be equitably estopped from enforcing a statute of limitations defense and has also waived that defense.   Accordingly, the Court will not dismiss Count 1 of Hilo's Third Amended Complaint for breach of contract.   The Court will dismiss all other claims with prejudice.

**BACKGROUND**

I.   **FACTS**

Plaintiff Hilo Products ("Hilo") is a Hawaiian wholesale produce company.  (3rd Am. Compl. ("Compl.") ¶ 7, Apr. 6, 2023, Docket No. 122.)  It purchases produce from growers to distribute to markets, hotels, and schools.  (*Id.*)  When Target Corporation ("Target") opened stores in Kona, Hawaii in 2009, and Hilo, Hawaii in 2011, it contracted with Hilo to supply produce to those stores.  (*Id.* ¶¶ 9–12.)

At the beginning of their relationship, Hilo registered for Target's vendor management software, Partners Online.  (Order Granting Target Corp.'s Mot. Transfer Venue ("Transfer Order") at 2, Jan. 30, 2023, Docket No. 108.)  Target and Hilo used Partners Online to coordinate pricing and process disputes.  (Compl. ¶ 13.)  When registering for Partners Online in 2009 and 2011, Hilo signed Target's Partners Online Agreement and the accompanying Conditions of Contract.  (See Transfer Order at 2, 20–21; Compl. ¶ 13.)  The Conditions of Contract specified that Hilo "may not bring a claim, dispute, lawsuit, demand or other cause of action based upon the transactions under the

Contract . . . more than one year after the cause of action has accrued." (Mot. to Change Venue, Ex. 4 ("Conditions of Contract") at 11, Mar. 1, 2022, Docket No. 7-4.)

Target completed Hilo's order form when it required produce. (Compl. ¶ 14.) Hilo presented invoices upon delivery which Target would stamp and sign. (*Id.* ¶¶ 16–20.) In addition to the physical invoices, Hilo would submit every invoice through Partners Online. (*Id.* ¶ 26.)

A few years into the companies' relationship, Target began underpaying some invoices and not paying others. (*Id.* ¶¶ 29, 31.) Hilo refers to the underpaid and unpaid invoices collectively as backlogged invoices. (*Id.* ¶ 32.) Per Target's instructions, Hilo would occasionally dispute batches of backlogged invoices through Partners Online. (*Id.* ¶ 33.) It would also contact Target's managers for assistance, who would help ensure payment. (*Id.* ¶ 36.) Hilo was able to resolve most of the 2011 and early 2012 backlogged invoices through these efforts. (*Id.* ¶¶ 37, 43.)

But the problems persisted. Target would often take months, and sometimes years, to pay Hilo's invoices. (*Id.* ¶¶ 45–47.) By 2013, some backlogged invoices were over two years old. (*Id.* ¶ 53.) And although Target initially indicated it would not review invoices that were more than two years old (a policy later shortened to 18 months), it continued to pay backlogged invoices older than two years. (*Id.* ¶¶ 54–55.) By 2014, Hilo had collected more than 300 backlogged invoices, some of which it continued to successfully resolve through its contacts with Target. (*Id.* at ¶ 56.)

In mid-2018, Target stopped ordering produce from Hilo.  (*Id.* ¶¶ 59–61.)  Hilo continued to submit backlogged invoices through Partners Online even after it ceased receiving orders.  (*Id.* ¶¶ 62–63.)

Target later asked Hilo to restart produce deliveries, but Hilo refused to do so until Target resolved the backlogged invoices.  (*Id.* ¶¶ 64–65.)  Hilo nonetheless did not sue Target because it believed, based on their prior dealings, that Target could and would pay. (*Id.* ¶¶ 67–69.)  Target continued to work with Hilo to pay the backlogged invoices through 2019 and 2020.  (*Id.* ¶ 69–71.)  For example, Target paid June 2017 invoices in February 2020.  (*Id.* ¶ 72; Pl.'s Opp. to Def.'s Mot. to Dismiss ("Opp.") at 8 n.3, June 16, 2023, Docket No. 129.)  That would turn out to be the final payment.  (Compl. ¶ 72.)

Over the next year, Hilo continued to send summaries of accounts and stay in touch with Target's employees.  (*Id.* ¶¶ 73–74.)  In late-June 2021, one of Target's employees texted Hilo "I will be in Hilo tomorrow and would love to meet with you and get this backpay cleared up."  (*Id.* ¶ 76.)  The two companies discussed the backlogged invoices, along with the possibility of resuming their supplier relationship.  (*Id.* ¶ 77.)

Target's local representative instructed Hilo to contact Target's legal counsel for payment of backlogged invoices.  (*Id.* ¶¶ 78–79.)  That turned out to be the final roadblock in Hilo's collection efforts.  (*Id.* ¶ 80.)  On August 2, 2021, Target's legal counsel responded;

> Pursuant to Target's Conditions of Contract as set forth on
> Partners Online vendors have 18 months to submit a

> payment-related claim to Target . . . .  All of the invoices listed in your attachments are well beyond that 18-month period; therefore, these claims are not validly made and Target will not pay these amounts.

(*Id.* ¶ 81.)  This was the first and only indication Target would not pay the backlogged invoices at issue in this action.  (*Id.* ¶ 82.)

## II.    PROCEDURAL HISTORY

Hilo filed its initial complaint on December 27, 2021 alleging Target owed nearly $1.37 million from backlogged invoices dated between 2011 and 2018.  (*Id.* ¶¶ 85, 88.)

Target removed the action from Hawaii state court to the District of Hawaii under 28 U.S.C. §§ 1332, 1441, and 1446.  (Notice of Removal at 2, Feb. 22, 2022, Docket No. 1.)  After limited discovery, the District of Hawaii granted Target's Motion to Transfer Venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).  (Transfer Order at 1, 3, 43.)  The District of Hawaii concluded that Hilo was bound by the 2011 Conditions of Contract, including its clause mandating venue in the District of Minnesota.  (*Id.* at 43.)

Hilo then filed its Third Amended Complaint, with Target's consent, in the District of Minnesota.  (*See* Order Regarding 3rd Am. Compl., Apr. 6, 2023, Docket No. 121.)  Target now moves to dismiss Hilo's Third Amended Complaint under Rule 12(b)(6).  (Mem. Supp. Mot. Dismiss 3rd Am. Compl., May 26, 2023, Docket No. 126.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor must the Court accept mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quotation omitted).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).  The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those

documents do not conflict with the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).[1]

## II.   BREACH OF CONTRACT

The District of Hawaii, in reaching its decision to transfer venue, already determined the parties are bound by their contract. (*See* Transfer Order at 43.) Target does not dispute, at least at this stage of litigation, that it breached the contract and underpaid Hilo to the tune of approximately $1.37 million. Instead, Target relies only on a statute of limitations defense. Target bears the burden of proving this action is time-barred. *See Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 326 (Minn. 2019).

### A.   Claim Accrual

The contractual time bar only starts the year-long clock once "the cause of action has accrued." (Conditions of Contract at 11). But the 2011 contract does not set a deadline for Target to pay Hilo's invoices. It is thus unclear from the face of the 2011 contract when Target breached its obligation to pay Hilo, and accordingly, when Hilo's cause of action accrued. *See Everett v. O'Leary*, 95 N.W. 901, 902 (Minn. 1903) ("The

---

[1] Target argues that the Court should not consider materials outside the complaint, aside from relevant contracts, in ruling on this Motion to Dismiss. *Accord* Fed. R. Civ. P. 12(d); *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). Hilo attached a lengthy set of exhibits to its Opposition Motion which Target contends the Court cannot consider. Because Hilo's complaint, standing alone, survives a motion to dismiss, there is no need for the Court to look to the non-contractual exhibits.

general rule is that a cause of action for a breach of a contract accrues immediately upon the happening of the breach.").

Nonetheless, Hilo's invoices make plain that Target breached the contract each time it did not pay within thirty days of receiving an invoice. Hilo's invoices designated the payment term as "net 30," meaning payment was due thirty days after Hilo provided the invoices to Target. (*E.g.* Mem. Opp. Mot. to Dismiss ("Opp."), Ex. 24, June 16, 2023, Docket No. 129-28.); *see C & M Giant Tire, LLC v. Triple S Tire Co., Inc.*, No. 13-162, 2014 WL 5824789, at *3 (E.D. Ky. Nov. 10, 2014) ("'[N]et 30' is a standard term which means that payment is due within thirty days from the date of invoice."). The integration clause in the 2011 contract incorporates "any agreement(s) entered into between Purchaser and Vendor"—language that encompasses the invoices supplied by Hilo and stamped by Target. (Conditions of Contract at 10; *see also id.* at 11 ("Purchaser pays from invoice only.")) In essence, then, Target breached the contract each time it did not pay within thirty days of receiving an invoice, and Hilo accrued a claim for each invoice at each of those moments. The yearlong clock began ticking as to each invoice every time thirty days lapsed without payment. Because even the latest invoice is from 2018 and Hilo did not bring this action until 2021, all claims are time-barred. (*See* Compl. ¶¶ 85, 88.)[2]

_____

[2] Hilo raises a compelling argument that the course of performance set a later breach date. But that course of performance must cede to the express terms of the invoices, which were integrated into the 2011 contract. See Minn. Stat. § 336.1-303(e)(1) (when express contractual terms conflict with the course of performance, the "express terms prevail"). What is more, some of Hilo's conduct suggests that it believed the invoices came due before Target expressly

-8-

B.    **Acknowledgment**

Hilo argues that, even if the statute of limitations ran at some point before it brought this case, Target acknowledged the debt and reset the statute of limitations. "[A]n unqualified and unconditional acknowledgment of a debt implies a promise to pay" no matter "whether the acknowledgment precedes or follows the bar of the statute of limitations on the debt." *Reconstruction Fin. Corp. v. Osven*, 290 N.W. 230, 231 (Minn. 1940). Hilo points to three such acknowledgments: Target's voluntary payment of some invoices in February 2020, an August 2020 email, and a June 2021 text message.

Start with the February 2020 payment. Just like an oral or written statement, a partial payment may reset the statute of limitations "upon the theory that it amounts to a voluntary acknowledgment of the existence of the debt from which a promise to pay the balance is implied." *Bernloehr v. Fredrickson*, 7 N.W.2d 328, 329 (Minn. 1942). Payment as acknowledgment is largely immaterial in this case. The February 2020 payment would have given Hilo only until February 24, 2021 to initiate this action—more than ten months before Hilo actually did so.

In any event, this claim is not on all fours with the partial payment theory of acknowledgment. The 2020 payment can hardly be viewed as an acknowledgment of **all** outstanding invoices from 2011-2018. The payment specifically covered invoices from

---

repudiated its obligation to pay. Indeed, Hilo threatened to refer Target to its attorneys for collection in November 2020. (*See* Compl. ¶ 74.) It would be unusual for Hilo to refer Target for legal collection efforts if it did not believe the invoices were past due.

June 2017. (Compl. ¶ 72.) It would be quite a leap, in a dispute over hundreds of distinct invoices spanning seven years, to treat payment of one or two as acknowledgment of all. *Accord Whitney v. Reese & Heylin*, 11 Minn. 138, 148 (1866) ("[W]here there are more debts than one due . . . it must appear to which [the acknowledgment] applies, or it cannot be applied to either.").

The August 2020 email runs into the same initial roadblock as the February 2020 payment. The email precedes the initiation of this action by more than one year, so it is of little practical use to Hilo. Target also correctly points out that the email did not appear, nor was it referenced, in Hilo's pleadings. It thus exceeds the bounds of a 12(b)(6) ruling. *See* Fed. R. Civ. Pro. 12(d).

Even setting aside the timeliness and pleading issues, the email does not rise to the level of an "unqualified and unconditional acknowledgment." *Osven*, 390 N.W. at 231. Instead, the email conveyed only generalities reading "I have heard through the grapevine that we owe Hilo for unpaid invoices and I would like to help resolve them rather than have Hilo take legal action." (Opp., Ex. 36, June 16, 2023, Docket No. 129-40.)

The June 2021 text message is the only communication Hilo cites that is recent enough to provide Hilo with a timely complaint. The text message read, in relevant part, "I will be in Hilo tomorrow and would love to meet with you and get this backpay cleared up." (Compl. ¶ 16.) While within the timeframe, the text message is not an "unqualified and unconditional acknowledgment." *Osven*, 390 N.W. at 231.

These statements—particularly the June 2021 message—are not nearly as definite as those that would typically reset the statute of limitations. *See, e.g.*, *Olson v. Myrland*, 264 N.W. 129, 131–32 (1935) ("I have promised to sign [the notes] again for one year. At that time they shall be paid . . . ."). While Target's messages may capture some "general acknowledgment of being indebted," a promise to pay when the defendant owes more than one debt must specifically identify the debt(s) to which the promise applies. *See Smith v. Moulton*, 12 Minn. 352, 355 (1867); *Whitney*, 11 Minn. at 147–48. None of the messages specified which invoices Target intended to pay, nor did they clearly espouse a desire to pay all outstanding invoices. The only message within the relevant time period is weakest of all, making a vague offer to "get this backpay cleared up." (Compl. ¶ 16.)

Accordingly, the Court finds there was no acknowledgment sufficient to restart the statute of limitations.

### C.   Equitable Estoppel

When a party "string[s] [its creditor] along until after expiration of the statute of limitations under the original payment date," it may be equitably estopped from enforcing that statute of limitations. *See Bottum v. Jundt*, No. 09-797, 2009 WL 5092747, at *8 (Minn. Ct. App. Dec. 29, 2009). Hilo has plausibly alleged that is precisely what Target did here. In short, Hilo argues that Target's continuous practice of paying backlogged invoices more than one year old, coupled with ongoing efforts to resolve outstanding amounts, "induced Hilo Products into holding off legal action against" Target "until the parties met in July of 2021." (Opp. at 35.)

"Because it protects the blameless and is a powerful means for the accomplishment of justice, equitable estoppel is a favorite of the law." *Albachten v. Bradley*, 3 N.W.2d 783, 785 (Minn. 1942). Hilo bears the burden of establishing equitable estoppel. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990). Specifically, it must prove: "(1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and, (3) that it will be harmed if estoppel is not applied." *Id.* Estoppel is a factual inquiry and "ordinarily presents a question for the jury." *Brenner v. Nordby*, 306 N.W.2d 126, 127 (Minn. 1981); *In re ResCap Liquidating Tr. Litig.*, 428 F. Supp. 3d 53, 123 (D. Minn. 2019). As a result, Hilo can satisfy its burden for purposes of a motion to dismiss by simply establishing plausible grounds for estoppel.

### 1. Promises or Inducements

Beginning with the first element, Hilo has made a sufficient showing to survive a 12(b)(6) motion that Target made promises or inducements which caused Hilo to delay legal action.

Target contends its promises were not explicit enough to form the basis of equitable estoppel. And if the Court were to look only at Target's express representations from isolated occasions, Target would probably be correct. *See Meyer v. Interstate Improvement, Inc.*, No. 13-3197, 2015 WL 7253761, at *4 (D. Minn. Nov. 17, 2015) (requiring "more concrete and specific representations that [the defendant] would fulfill their obligations upon the occurrence of a particular event or the passage of a particular amount of time").

-12-

But party conduct matters too.  *See Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn. 1980) (defining equitable estoppel based on party "conduct," including "acts, language or silence"); *In re ResCap Liquidating Tr. Litig.*, 428 F. Supp. 3d at 122, 124 ("Minnesota case law suggests that a party to a contract may support an estoppel defense with . . . suggestive course of conduct.") (internal quotation omitted).  The parties "had a long history of resolving invoices," going back to 2011.  (Compl. ¶ 37, 89.)  "Throughout all relevant times," Target "employees continued helping Hilo Products resolve backlogged invoices" and continued to pay.  (*Id.* ¶ 68.)  When a debtor has repeatedly paid time-barred invoices and expresses a continued willingness to "get this backpay cleared up," the entire course of conduct may be reasonably viewed as a promise to forego a limitations defense and inducement to forbear legal action.  (*Id.* ¶ 76.)  Stay out of court and we'll get this resolved, as we always do.  At minimum, a decade of such conduct presents a triable question of fact.

To be sure, Target's actions and statements may not appear fraudulent nor to be taken in bad faith.  *Contra Albachten*, 3 N.W.2d at 785 ("The basis of estoppel is fraud.")  But even if the origins of estoppel lie in fraud, fraud is not a necessary component.  *See Tozer v. Ocean Accident & Guarantee Corp., of London*, 94 Minn. 478, 484 (1905) ("No doubt, appellant acted in good faith; but bad faith is not always necessary to estoppel, and it does not always follow that no estoppel will arise when the party to whom the representation is made has knowledge as to the truth of all the facts.").  As a result,

dismissal on the grounds that Target did not make promises or inducements would be inappropriate.

### 2. Reasonable Reliance

Hilo has also pled sufficient facts to allow a jury to decide whether Hilo's decision to postpone suit based on Target's inducements was reasonable. "A consideration of primary relevance" to equitable estoppel "involves an inquiry respecting the diligence of the claimant in asserting its action—or, in other words, were its actions or inactions relating to timely assertion of its claims reasonable when viewed in the light of all existing circumstances?" *Hydra-Mac*, 450 N.W.2d at 919. Here, Hilo alleges it "was eventually paid almost all of its invoices" through an ongoing pattern of successful—if not particularly speedy—dispute resolution efforts. (Opp. at 24.) Thus, although beyond the time limit imposed by the contract, a factfinder evaluating all surrounding circumstances could conclude Hilo initiated this action within a reasonable time from the breakdown of communications with Target.

The Court will not hold that Hilo's reliance on the informal dispute resolution process was unreasonable as a matter of law. Hilo did not timely bring an action because it wanted to resolve the dispute amicably and had good grounds to believe it would be successful in doing so. (Compl. ¶¶ 68, 89.) The judiciary generally encourages parties to work out conflicts amongst themselves when possible. *See, e.g.*, Fed. R. Evid. 408; D. Minn. L.R. 7.1. Enforcing the statute of limitations here would punish Hilo for attempting to do just that. If the Court were to rule for Target, future parties in Hilo's situation would

-14-

have little choice but to rush to court even while they believe, based on the other party's

conduct, that an out-of-court resolution remains likely.

Courts apply equitable estoppel to avoid such quandaries.  For example, if a home

or automobile seller is working to repair defects while the warranty period runs, a court

will not punish the buyer for allowing the seller a chance to fix the issue.[3]  Likewise, the

Court equitably tolled the statute of limitations for an ERISA claimant whose statutory

claim period ran while she was still exhausting her administrative remedies.  *Wolfe v. 3M*

*Short-Term Disability Plan*, 176 F. Supp. 2d 911, 917–18 (D. Minn. 2001).  Here, too, the

Court will not hold that a party facing the "procedural quagmire" of an imminent time bar

must file suit while amicable resolution remains likely.  *See id.*

### 3.    Harm

Little needs to be said about the final factor.  Hilo will lose the opportunity to

recoup the $1.37 million it claims Target owes if its claim is time-barred.

Accordingly, the Court will deny Target's Motion to Dismiss Count I (Breach of

Implied or Express Contract) of Hilo's Third Amended Complaint because Target is

equitably estopped from enforcing the statute of limitations at this stage of litigation.

---

[3] *See, e.g.*, *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1230 (D. Minn. 2020); *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789 (8th Cir. 2009).

### D.     Waiver

Hilo also contends Target waived its right to enforce a statute of limitations defense.  "Waiver is the intentional relinquishment of a known right."  *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011).  A party asserting waiver bears the burden of showing the opposing party (1) knew (whether actually or constructively) of its right, and (2) intended (whether evidenced expressly or impliedly) to relinquish that right.  *Id.*  Waiver is generally a question of fact, "rarely to be inferred as a matter of law."  *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009).  When a party acts inconsistently with the terms of a contract, the factfinder may conclude that the party waived those terms.  *Id.*  Hilo has pled sufficient facts to establish waiver of the one-year claim bar under a 12(b)(6) standard of review.

The Court finds many of the facts that established equitable estoppel to be persuasive in deciding waiver.  Target frequently resolved and issued payment on invoices that were more than one year old.  A trier of fact could reasonably conclude that Target thus waived its right to enforce a timeliness defense.  To be sure, there are occasions when "cooperation between businesses . . . without more, is insufficient to raise an issue of fact regarding waiver of express terms of an agreement."  *Valspar*, 764 N.W.2d at 368.  But the Court will not dismiss Hilo's waiver claim as a matter of law based on a single case involving a one-off instance of business cooperation.  *See id.* at 366, 368.  Whereas a single instance of amicable resolution should not lead a party to assume its contractual partner waived its rights, a party may more reasonably reach that conclusion based on a years

-16-

long pattern of conduct contravening contractual terms. The continuous practice of non-timely dispute resolution here establishes enough forbearance that a factfinder could determine that Target waived its right to enforce a cause of action deadline.

The Court's conclusion is not defeated by the contract's nonwaiver provision. (*See* Conditions of Contract at 14.) It is certainly true that "[n]onwaiver clauses 'must be given their fairly intended effect.'" *In re RFC & RESCAP Liquidating Tr. Action*, No. 13-3451, 2020 WL 504661, at *12 (D. Minn. Jan. 31, 2020) (quoting *Marblestone Co. v. Phoenix Assur. Co. Ltd., of London*, 210 N.W. 385, 387 (Minn. 1926)). But at the same time, "the mere presence of a nonwaiver clause does not automatically bar a waiver claim." *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 918 (8th Cir. 2013) (quoting *Pollard v. Southdale Gardens of Edina Condo. Ass'n, Inc.*, 698 N.W.2d 449, 453 (Minn. Ct. App. 2005)). That caveat makes sense: the whole point of waiver is that party conduct may overcome contractual terms. *See Pollard*, 698 N.W.2d at 453–54. If party conduct can displace other parts of a contract, so too can it displace a nonwaiver clause. *See id.* For years, Target did not enforce a claim deadline. The nonwaiver clause is insufficient to overcome that conduct as a matter of law.

In sum, Hilo has pled sufficient facts to proceed with its claim Target waived its right to enforce the cause of action deadline. Accordingly, the Court will also deny Target's Motion to Dismiss Count I (Breach of Implied or Express Contract) of the Third Amended Complaint based on waiver.

-17-

III.    **EQUITABLE CLAIMS**

Target's defenses to Counts 3 (Account Stated) and 4 (Unjust Enrichment) boil down to the fundamental proposition that "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Hilo tries to evade this foundational principle by alleging (1) it is not clear that the contract governs, and (2) in any event, it may plead alternative and incompatible claims for relief, *see* Fed. R. Civ. Pro. 8. These arguments are unavailing.

Equitable claims are barred only "when there is no dispute that a written contract governs the disputed account." *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1030 (D. Minn. 2019). Hilo maintains that "there is a dispute as to whether a contract, vendor guidelines, statute, or the course of performance governs the parties' relationship." (Opp. at 29.) But Hilo does not actually dispute whether the contract governs. It only claims that those other sources of law may alter the interpretation of the contract and undermine a statute of limitations defense.

There is a difference between a case that turns on formation defenses to a contract—in which case the contract may not govern—and a case that turns on enforcement defenses. *Cf. U.S. Fire Ins. Co.*, 307 N.W.2d at 497 (finding equitable remedies unavailable once it found the contract was valid). In the latter genre of cases, the contract remains valid even if the court construes certain terms differently.

This case falls into the latter genre. Hilo claims the statute of limitations provision of the contract is unenforceable but does not contend the contract is invalid. Nor could it. That issue was already litigated and decided. (*See* Transfer Order at 43 (granting change of venue after determining the contract was valid, and therefore the venue provision governed)); *Agostini v. Felton*, 521 U.S. 203, 236 (1997) ("[A] court should not reopen issues decided in earlier stages of the same litigation.").

Alternative pleading cannot save Hilo's claims for equitable relief. Of course, parties may plead claims that are incompatible with one another. *See* Fed. R. Civ. Pro. 8. But alternative pleading does not relieve a party of its ordinary obligation to supply a plausible basis for each claim. Hilo seems to assume that if its contractual claims fail, equitable relief would become available. But Hilo's contractual claims would not fail because the contract did not govern; the claims would fail because the contract—including the statute of limitations—**does** govern. Accordingly, the Court will grant Target's Motion to Dismiss Count III (Account Stated) and IV (Unjust Enrichment) of Hilo's Third Amended Complaint.

## IV.   AGRICULTURAL GOOD FAITH AND FAIR DEALING

Minnesota law provides "an implied promise of good faith . . . by all parties in all agricultural contracts." Minn. Stat. § 17.94. Hilo alleges Target violated this statutory duty when it refused to pay backlogged invoices.

Though the parties raise intriguing arguments about the geographic reach of the statute, the Court need not reach those questions. The statutory duty would not apply

-19-

even if the events took place entirely within Minnesota.  Section 17.94 applies to "all agricultural contracts," which are defined as "any written contract between a contractor and a producer."  Minn. Stat. § 17.90 subd. 1(a).  "Producer," in turn, "means a person who produces or causes to be produced an agricultural commodity" and "is able to transfer title to another" or "provides management, labor, machinery, facilities, or any other production input for the production of an agricultural commodity."  *Id.* subd. 4.  Hilo is not a producer; it is a wholesaler that is the middleman between agricultural producers and Target.  Under the statutory definitions, this dispute is between two contractors, not a contractor and producer.  Thus, this is not an "agricultural contract," and § 17.94 does not apply.[4]

Accordingly, the Court will dismiss Count II of Plaintiff's Third Amended Complaint (Breach of Covenant of Good Faith and Fair Dealing) because Hilo does not, nor could it, state a claim under Minnesota Statute § 17.94.

## CONCLUSION

Neither party disputes Hilo's complaint states a plausible claim for breach of contract; Target simply alleges the statute of limitations bars such a claim.  But because a factfinder could conclude Target induced Hilo to reasonably forbear filing its complaint,

---

[4] The Court's determination that § 17.94 is inapplicable is further confirmed by the absence of mandated formalities in an agricultural contract under Minnesota law.  The statutory subchapter establishes specific cover sheet requirements for agricultural contracts and requires the parties to use certain language.  *See* Minn. Stat. §§ 17.942, 17.91.  The parties' contracts include none of the above.

the Court will disallow Target that defense at the Motion to Dismiss stage. Because the contract governs, though, the Court will dismiss Hilo's claims for equitable relief. Finally, Hilo's statutory claim is legally baseless and will be dismissed.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 124] is **GRANTED with respect to Counts II, III, and IV of the Third Amended Complaint, and DENIED with respect to Count I.** Because Hilo could not cure the deficiencies in Counts II, III, and IV through amended pleadings, those claims will be **dismissed with prejudice.**

DATED:  December 28, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge